CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA., FILED
JUL 16 2008
JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| WILLIAM M. HOOKER, JR., | ) |
| Appellant, | ) Civil Action No. 5:08CV00023 |
| v. | ) MEMORANDUM OPINION |
| EDUCATIONAL CREDIT MANAGEMENT CORPORATION, | ) By: Samuel G. Wilson<br>) United States District Judge |
| Appellee. | ) |

This is an appeal following a remand by this court by appellant-debtor William M. Hooker, Jr. from a final decision of the United States Bankruptcy Court for the Western District of Virginia finding that Hooker, who has been diagnosed as paranoid-schizophrenic and HIV-positive, failed to meet the "undue hardship" requirement of 11 U.S.C. § 523(a)(8) to discharge his student loan obligations. The court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). The court concludes that a further remand for fact finding is warranted, a remand necessitated, in part, by ambiguity in this court's opinion in the first appeal.

I

Hooker discovered he was HIV-positive in 1999 and has also been diagnosed as paranoid-schizophrenic. Both of these diseases are permanent, require a lifetime of medication and medical care, and have limited his ability to perform certain types of work and the number of hours he is capable of working. Between 1989 and 1997, Hooker obtained eleven student loans totaling more than $80,000 from CitiBank, which he consolidated in July 2001. He has only repaid $1549.31.

For the past 10 years, Hooker has been seasonally employed from April through

November as a waiter at a restaurant in the Shenandoah National Park. From December through March, he has worked either as a waiter at a different restaurant or drawn unemployment compensation, although due to his deteriorating health, he does not anticipate being able to work year-round in the future. He requires AIDS medication costing approximately $1,190 each month, which is currently paid for by the AIDS Drug Assistance Program, although he otherwise has no health insurance to cover treatments or medication. Hooker's 2005 tax returns showed an adjusted gross income of $19,622, an average of $1635.17 per month, and his schedule J filed in 2005 showed $1161.50 in monthly expenditures. Hooker has made some payments on his student loans and has sought forbearances and consolidations. Hooker testified in the bankruptcy court that he regularly paid his loans until 2001, when he claims he became financially unable to continue making payments. (Trial Tr. at 16:1-9, 20:1-3, Aug. 3, 2006). Despite knowing about an income contingent repayment option for his loans, Hooker admitted he did not further investigate or participate in the program, which would have required him to pay an estimated $160.12 each month.

Student loan debt is excepted from discharge unless excepting it would "impose an undue hardship on the debtor." 11 U.S.C. § 523(a)(8). The Fourth Circuit has adopted the Second Circuit's three-prong test outlined in Brunner v. N.Y. State Higher Educ. Servs. Corp., 831 F.2d 395, 396 (2d Cir. 1987), for determining whether a debtor has demonstrated an "undue hardship" to discharge the debtor's student loans. Educ. Credit Mgmt. Corp v. Frushour (In re Frushour), 433 F.3d 393, 398 (4th Cir. 2005). To prove an undue hardship under that test a debtor must show: (1) he cannot maintain a minimal standard of living and repay the loans; (2) additional circumstances exist that illustrate he will not be able to repay the loans for a substantial part of

2

the repayment period; and (3) he attempted to repay the loans in good faith. Id. at 400. The bankruptcy court, relying on In re Frushour, found it unnecessary to decide whether Hooker satisfied Brunner's first two prongs because it concluded that he had failed to satisfy the third. The bankruptcy court concluded that Hooker did not prove that he attempted to repay his loans in good faith because he failed to look into or participate in an income contingent repayment plan, his payments were "few and far between," and he repaid only a small amount in proportion to the amount borrowed.

In remanding the case, this court noted that in In re Frushour the Fourth Circuit found that Frushour, a healthy young woman who refused to take advantage of a loan repayment option that would have allowed her to keep her preferred employment and maintain her current level of expenditures because she did not feel that the plan was suited for her and she wanted "a fresh start," did not demonstrate a good faith effort to repay her loans. In re Frushour, 433 F.3d at 403. The Fourth Circuit found it unnecessary to reach the first prong of the Brunner test because it concluded that Frushour failed to satisfy both the second and third prongs. It held that the second prong, "that additional circumstances exist indicating [the debtor's] state of affairs is likely to persist," is demanding, requiring that a "certainty of hopelessness exists that a debtor will not be able to repay the student loans." Id. at 401 (internal quotation marks omitted). It noted that only a debtor with rare circumstances would satisfy this prong, such as a an "illness, [a] disability, a lack of useable job skills, or the existence of a large number of dependents." Id. (internal quotation marks omitted). Frushour failed this prong because she provided no additional circumstances beyond the debt itself to show her hardship was undue. Id. In considering the third prong, the Fourth Circuit held that Brunner's "good faith" requirement focuses on the

3

debtor's efforts to obtain employment, maximize his income, and minimize his expenses, and that Frushour did not show the requisite effort necessary to satisfy this prong. Id. at 402-03.

In the initial proceeding before the bankruptcy court, Hooker testified that he discovered he was HIV-positive after going to the doctor with flu-like symptoms in 1999 and began going to the University of Virginia Infectious Disease Clinic in November 1999. He was put on medication in March of 2000 and claims to have regularly paid his loans from 1996 until 2001, at which time he testified he no longer had the ability to make regular payments. Consequently, this court viewed the facts of Hooker's case to stand in sharp contrast to those in Frushour and did not believe that Hooker's failure to investigate or enroll in the income contingent repayment plan should prevent him from discharging his student loan debt:

> In contrast to Frushour, Hooker has only meager earnings, appears to have a very modest lifestyle, has a serious mental disorder, and is fighting a terminal disease that requires him to receive assistance and medications in order to survive. An HIV-positive, paranoid-schizophrenic does not have to juggle the burdens of his illnesses, the cost of his medical care, and his student loan debt to satisfy the good faith requirement of Brunner's "undue hardship" test. Against the backdrop of a disease that looms largely in his future and his meager earnings, Hooker's failure to investigate or enroll in the income contingent repayment plan should not be dispositive.

Hooker v. Educ. Credit Mgmt. Corp., 368 B.R. 502, 505 (W.D. Va. 2007).

However, "[w]hether a debtor has met the undue hardship standard is a legal conclusion that is based on the debtor's individual factual circumstances. It is thus a mixed question of law and fact . . . reviewed under a hybrid standard, applying to the factual portion of each inquiry the same standard applied to questions of pure fact and examining de novo the legal conclusions derived from those facts." In Re Freshour, 433 F.3d at 398 (internal quotations and citations omitted). Given the standard of review, this court did not believe it could conclude as a matter of

4

law that Hooker had met the undue hardship standard without further fact finding by the bankruptcy court concerning Hooker's payment history and the onset and interplay of his illnesses. Accordingly the court remanded the case to the bankruptcy court for further consideration and fact finding:

> Determining whether or not Hooker has demonstrated a good faith effort to repay his loans is a fact-laden inquiry, and this court cannot say as a matter of law that Hooker demonstrated good faith without *more fact-finding by the bankruptcy court* concerning Hooker's payment history and the onset and interplay of his illnesses.

Hooker, 368 B.R. at 505.

On remand, the bankruptcy court made no findings as to the interplay of Hooker's illnesses and his failure to make payments. If Hooker's claims are true and he made regular payments when he could but the progression of his illnesses substantially interfered in his ability to earn income and realistically retire his indebtedness, the court sees nothing in circuit precedent that should burden him with his student loan debt until he dies. Accordingly, the court remands this case to the bankruptcy court for further proceedings.

Unfortunately, this court made an ambiguous finding in its earlier opinion which the bankruptcy court apparently construed as a holding by this court that the evidence presented at the first bankruptcy court hearing was insufficient to satisfy Hooker's burden of proving good faith. This court stated "that Hooker's failure to investigate the repayment plan is not dispositive and that given the circumstances of this case, *additional information is necessary* to determine whether Hooker's loan debt should be discharged." Id. (Emphasis added). This court did not intend to hold that Hooker had failed to prove good faith so that it was incumbent on him to produce new evidence. Rather, the court believed further findings of fact by the bankruptcy court

5

were necessary to determine the relationship between Hooker's illnesses and his inability to pay his student loans.

## II

Accordingly, the court **REMANDS** this case to the bankruptcy court for further proceedings.

**ENTER:** This 16th day of July, 2008.

_____
UNITED STATES DISTRICT JUDGE

6